Alejandro Marcos LOPEZ–SCAVONE; Emilia Lopez–Cota Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 00–70168.
I & NS Nos. A71 625 511 A71 625 510.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 11, 2001.

Decided Oct. 10, 2001.

Before REINHARDT, HAWKINS, and RAWLINSON, Circuit Judges.

MEMORANDUM *

Alejandro Lopez–Scavone ("Lopez–Scavone"), a native of Argentina, petitions for review of the Board of Immigration Appeals' ("BIA") denial of his request for suspension of deportation and voluntary departure. The BIA found that Lopez–Scavone was statutorily ineligible for suspension of deportation because he had not accrued the requisite seven years of continuous physical presence in the United States, and that he was ineligible for voluntary departure because he lied regarding the facts relating to a prior conviction for writing bad checks and was therefore per se not a person of good moral character. Emilia Lopez–Cota ("Lopez–Cota"), a native of Mexico, and the wife of Lopez–Scavone, petitions for review of the BIA's denial of her request for suspension of deportation. The BIA found Lopez–Cota ineligible because she had not accrued the requisite seven years of continuous physical presence. Lopez–Cota, unlike her husband, was granted voluntary departure. The transitional rules of IIRIRA apply to the Lopezes' appeal.

Before IIRIRA, an alien was eligible for suspension of deportation if he or she "ha[d] been physically present in the United States for a continuous period of not less than seven years immediately preceding *the date of [the] application*" for suspension of deportation (emphasis added) and certain other conditions were met. Commencement of deportation proceedings had no effect on an alien's accrual of the requisite seven years. Congress fundamentally altered this system by enacting IIRIRA's stop-time rule. The stop-time rule provides that the period of continuous physical presence in the United States shall be deemed to end when deportation proceedings commence. INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1). Thus, after IIRIRA, aliens must meet the continuous physical presence requirement before the commencement of deportation proceedings.

The IJ properly refrained from applying the stop-time rule to the Lopezes' case because their hearing was held in December 1996, prior to the effective date of IIRIRA (April 1, 1997). However, he denied them relief on unrelated grounds. The Lopezes filed a timely appeal of the IJ's decision in January 1997, and the BIA decided their appeal in January 2000. Be-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

cause it was deciding their case after the effective date of IIRIRA, the BIA was required to apply the new stop-time rule, *Ram v. INS,* 243 F.3d 510 (9th Cir.2001). Neither of the Lopezes had accrued the requisite seven years prior to the service of the Orders to Show Cause upon them, which service commenced their deportation proceedings. Thus, under the new rule they were ineligible for suspension of deportation.

■ The petitioners argue that the BIA was required to decide their case in the three months between the date of their appeal and the effective date of IIRIRA, in which circumstance it would not have been permitted to apply the new stop-time rule. There is, however, no rule that requires the BIA to decide appeals in so short a period of time, and petitioners point to no authority supporting their contention. Accordingly, we deny Lopez–Scavone's and Lopez–Cota's petition with respect to suspension of deportation.

■ Lopez–Scavone also petitions for review of the BIA's decision denying him voluntary departure on the ground that he lied about the facts surrounding his prior conviction for writing bad checks and was therefore per se ineligible as being a person not of good moral character. The transitional rules permit direct judicial review of a denial of voluntary departure based on the per se ineligible categories under the statute. *Kalaw v. INS,* 133 F.3d 1147, 1151 (9th Cir.1997) (holding that the application of the per se exclusion categories is a non-discretionary, reviewable decision). In order to be statutorily eligible for voluntary departure, a petitioner must show that "he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." 8 U.S.C. § 1254 (1994). The statute further provides that:

[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was ... one who has given false testimony *for the purpose of obtaining any [immigration] benefits.* 8 U.S.C. § 1101(f)(6). (emphasis added)

The Supreme Court has held that false statements on an application do not constitute "false testimony" for the purposes of the "good moral character" definition in 8 U.S.C. § 1101(f). *Kungys v. United States,* 485 U.S. 759, 780, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). The Court has also held that § 1101(f)(6) includes only false testimony made "with the subjective intent of obtaining immigration benefits." *Kungys,* 485 U.S. at 780, 108 S.Ct. 1537. Misrepresentations, even those that are material, that are made out of "embarrassment, fear, or a desire for privacy" are specifically excluded. *Kungys,* 485 U.S. at 780, 108 S.Ct. 1537.

■ In order to reverse the finding of the BIA with respect to eligibility for voluntary departure, the court must find that the evidence compels the contrary result. *See INS v. Elias–Zacarias,* 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In this case, the evidence conclusively demonstrates that Lopez–Scavone did not give false testimony with the requisite subjective intent but rather out of embarrassment, fear or the like. First, Lopez–Scavone answered honestly and forthrightly when asked directly if he had ever written bad checks, if he had ever been arrested and if he had ever gone to jail. Second, the allegedly false statements made by Lopez–Scavone concerned the details of the bad check incidents which had occurred years before the hearing, and about which he did not expect to have to testify. Lopez–Scavone consis-

tently and repeatedly told the immigration judge that he did not remember the details of the occurrences. Under persistent questioning from the judge after Lopez–Scavone had stated that he did not remember the details, the petitioner gave answers that could only be construed as inept and awkward attempts to recall. Lopez–Scavone was repeatedly interrupted by the judge and by his wife during his testimony, which undoubtedly caused him to feel that he was required to give answers despite his lack of memory. Third, Lopez–Scavone repeatedly testified that writing the bad checks was wrong and that he recognized that it was, and that he hadn't even told his wife about the details at the time. This testimony reveals that he was embarrassed about the writing of the checks, particularly about describing the details in the presence of his wife. In short, the totality of the evidence compels the conclusion that Lopez–Scavone did not give false testimony with the requisite subjective intent. Accordingly, we grant Lopez–Scavone's petition in part and order that he be granted a 30 day period of voluntary departure or any extension beyond that time as may be granted by the district director, effective no earlier than the date on which the mandate issues.

PETITION FOR REVIEW DENIED IN PART AND GRANTED IN PART.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.